OPINION OF THE COURT
Ronald J. Aiello, J.
The defendant moves, inter alla, for an inspection of the Grand Jury minutes and a dismissal of the indictments on the ground of legal insufficiency of the evidence before the Grand Jury. The defendant also moves for a dismissal of indictment *1054 number 1968/91 in that after he indicated that he wished to testify before the Grand Jury, pursuant to CPL 190.50, only as to the murder that took place on December 16, 1990, he was required to sign a waiver of immunity as to the three separate charges — a murder that took place on December 16, 1990 on the Williamsburg Bridge (victim — Tzipora Yagodajev), a rape that took place in Kings County on December 13, 1990 (victim —Debra Wagner) and an additional murder that took place on February 2, 1991 in Kings County (victim — Francisco Freyre). The defendant also moves under indictment number 1968/91 for a severance of counts 1 through 6 (the Bridge murder of December 16th) from counts 7 through 11 (the rape of December 13, 1990).
The motion to dismiss the indictments is denied and the motion for severance is granted.
Indictment number 1968/91 counts 1 through 6, charges the defendant with three counts of murder in the second degree, one count of attempted robbery in the first degree, one count of sexual abuse in the first degree and one count of tampering with physical evidence. These six counts of the indictment charge in substance, that the defendant murdered one Tzipora Yagodajev and attempted to steal property from her. The defendant is also charged (fifth count) with inserting an object into the vagina of Tzipora Yagodajev while she was physically helpless. The sixth count alleges that on December 17, 1990, the defendant tampered with physical evidence, i.e., the body and clothing of Tzipora Yagodajev, by alteration or destruction. For purposes of clarity and simplification, these six aforementioned counts will hereinafter be referred to as the "Bridge murder” counts. Seven through 11 charge in substance, that on December 13, 1990 the defendant engaged in sexual intercourse with one Debra Wagner, who was then physically helpless. She was physically helpless in that defendant rendered her unconscious by strangulation. This incident will be referred to as the "rape of December 13, 1990”. By indictment number 1897/91, defendant is charged along with codefendant Laura Sudol of two counts of murder in the second degree, one count of robbery in the first degree, one count of criminal possession of a weapon in the second degree, one count of criminal possession of a weapon in the third degree and one count of criminal possession of stolen property in the fourth degree.
The indictment alleges in substance that on February 2, 1991 the defendants, acting in concert, intentionally murdered *1055 one Francisco Freyre during the course of a robbery by shooting him and then stole certain property, namely, a quantity of credit cards. This incident will hereinafter be referred to as the "murder-robbery” of February 2, 1991.
As to legal sufficiency, the court has read the Grand Jury minutes and finds that, as to both indictments, the evidence adduced before the Grand Jury was legally sufficient to establish the finding of each and every count of the indictment or any lesser involved offense (People v Pelchat, 62 NY2d 97 [1984]; People v Calbud, Inc., 49 NY2d 389 [1980]; People v Turdo, 74 AD2d 614 [1980]). The standard of review is whether there has been a clear showing that the evidence before the Grand Jury, if unexplained and uncontradicted, would not warrant a conviction after trial (People v Dunleavy, 41 AD2d 717 [1st Dept], affd 33 NY2d 573 [1973]). The Assistant District Attorney correctly charged the Grand Jury with respect to the applicable law.
Accordingly, the defendant’s motion to dismiss each count of the two indictments, on this ground, is denied.
Defendant next asserts that the two indictments should be dismissed in that, as indicated ante, before he was permitted to testify before the Grand Jury, he was required by the prosecutor to sign a waiver of immunity as to three separate charges — a murder that took place on December 16, 1990 (the Bridge murder), a rape that took place on December 13, 1990 (the rape) and a murder that took place on February 3, 1991 (the murder-robbery). Defendant, although aware that the Grand Jury was investigating all three crimes, alleges that he wanted to testify only as to the "Bridge murder” of December 16, 1990. The defendant complains that the prosecutor would not let him testify before the Grand Jury unless he signed a waiver of immunity as to all three crimes. As authority for his motion, the defendant cites People v Scott (124 Misc 2d 357). In that matter, the defendant was charged with two unrelated crimes, grand larceny in the second degree and additionally with attempted assault in the second degree which was alleged to have taken place 10 days later. The defendant wished to testify only as to the attempted assault charge but not as to the grand larceny in the second degree charge. The prosecutor made it clear, as in the instant case, that the defendant would not be permitted to testify unless he signed a blanket waiver of immunity as to both cases. The prosecutor also made it clear that, in fairness to the defendant, he would restrict his cross-examination only to the assault case, provided the defen *1056 dont restricted his testimony accordingly. The defendant elected not to testify and was indicted for both the assault and grand larceny charge. The nisi prius court dismissed the assault count of the indictment with leave to the People to represent that count to another Grand Jury. The court recognized that "[c]ose law abounds with instances of unintended immunity conferred on a witness when responsively answering questions before the Grand Jury. Sometimes even the most innocuous questioning of a witness has been found to be responsive, substantial and material to a criminal charge. A prosecutor’s reluctance to permit a defendant or potential defendant [to testify] before a Grand Jury without a waiver of immunity is easily understandable when one examines decisions such as the following” (People v Scott, supra, at 361). Nonetheless, the court held that to require a defendant to execute a general waiver of immunity as to the grand larceny charge, as a precondition to his testimony on the attempted assault presentation would "raise an additional issue of coercion or involuntariness of the waiver. For a waiver to be effective it must be voluntary and not induced by improper means” (People v Scott, supra, at 364). The court concluded that the defendant was not properly accorded an opportunity to appear and testify before the Grand Jury on the assault charge.
The instant case may be distinguished on the facts from the Scott (supra) case, in that in Scott, the defendant never testified but in this case, the defendant Vargas not only testified but also limited the scope of his testimony to the subject matter he desired. Having done so, his objection is moot. In addition, the Scott court’s reasoning was rejected in a similar case, People v Griffin (135 Misc 2d 775). That court specifically declined to follow Scott’s lead to the extent that it implies "that a defendant may, without a showing of need, unilaterally avail himself of a 'limited’ waiver of immunity.” (People v Griffin, supra, at 777.) This court agrees with the Griffin court that Scott’s concern that, by the prosecutor demanding a general waiver of immunity, the defendant is forced to yield his privilege against self-incrimination on one charge so that he can testify on the other, is unfounded. By voluntarily testifying, defendant waives the Fifth Amendment privilege as to matters within the bounds of appropriate cross-examination. (Fitzpatrick v United States, 178 US 304, 315; People v Bridget, 73 AD2d 291, 298-299, quoting with approval People v Tice, 131 NY 651, 656-657; People v Shapiro, 308 NY *1057 453, 458.) Since nothing indicates that the Fifth Amendment protection still lies, defendant would not be compelled to yield this privilege; rather, it would have been waived. (People v Griffin, supra, at 777.) The Grand Jury minutes show that the prosecutor, despite the fact that he declined to accept a limited waiver of immunity, assured the defendant and his counsel, that the defendant could give testimony on whatever subject he wished and cross-examination would be restricted to that subject matter. The minutes also show that this promise was adhered to.
The defendant next asserts that the presentation of two separate murder cases and a rape charge to the same Grand Jury was "grossly unfair and prejudicial and that the Grand Jury could not separate these charges in their mind” and "render separate indictments”. Defendant cites not a single case wherein this was held to be improper prosecutorial conduct. Indeed the court’s own research revealed not one single case touching upon this issue. Moreover, the Grand Jury minutes are replete with cautionary instructions to the Grand Jury to consider each indictment separately. Accordingly, defendant’s motion to dismiss the indictment is denied.
Defendant’s motion for severance of indictment number 1968/91 is granted. The prosecution argues that pursuant to People v Molineux (168 NY 264) and People v Allweiss (48 NY2d 40) that the counts are properly joined in one indictment, even though based upon different criminal transactions, because both incidents are very close in time, both involve allegations of sexual misconduct and both crimes involve a strikingly similar modus operand!, in that both incidents involved the defendant grabbing a female from behind and choking her, causing a loss in consciousness. This modus operand! is not so unique as to justify joinder. Defendant’s right to a fair trial would be jeopardized by a joint trial of these charges. (People v Forest, 50 AD2d 260.) Accordingly, counts 1 through 6 (the Bridge murder) are severed from counts 7 through 11.