OPINION OF THE COURT
Michael A. Gary, J.
Defendant stands charged with criminal sale of a controlled *582 substance in the third degree (Penal Law § 220.39), criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), and the misdemeanor of endangering the welfare of a child (Penal Law § 260.10). He now moves the court pursuant to CPL 210.20 and 210.35 for dismissal of the charges against him on the grounds that the Grand Jury proceeding was defective as he was not accorded an opportunity to exercise his right to testify before the Grand Jury in accordance with the provisions of CPL 190.50. Defendant also moves for dismissal of the indictment pursuant to CPL 210.40 in the furtherance of justice.
Defendant was arrested at the scene, five minutes after an alleged drug sale to an undercover officer, on April 6, 1994 and charged with various drug offenses. The online booking sheet reflects his name as "John Doe”, a/k/a Richard Devone. Defendant’s criminal justice agency sheet is stamped "interview incomplete”. A handwritten note on the form indicates that there were two out-of-county warrants belonging to this defendant before the court. The Criminal Court file, including the complaint, reflects both John Doe and the "a/k/a” of Richard Devone, a name apparently culled from the attached NYSPIN sheet.
Upon defendant’s arraignment in Criminal Court on April 9, 1994, defendant maintained that he was not the person whose "rap” sheet was attached to the docket.
The court has reviewed the minutes of defendant’s arraignment proceeding. There was extensive colloquy between the presiding Judge and the defendant where defendant contended he was William Smith and that the name Richard Devone had been incorrectly ascribed to him. The court then questioned the defendant about his date of birth — which he gave as October 22, 1970. Comparing other pedigree information to the criminal justice agency’s, the Judge inquired of defendant what his Social Security number was. He stated he could not recall what it was. After more discussion, the Judge asked the court clerk/staff and/or the police department to address the issue of the set of fingerprints that were before the court. A police officer informed the Judge that the defendant had refused prints three days prior, claiming his hand hurt. Accordingly, they took prints of only one hand. At the arraignment defendant apparently had bandages on his hands. (When ordered to reprint the defendant, the police officers disclaimed any responsibility for any pain that defendant might suffer or complain of.)
*583 At a second call later that evening (though no prints were taken) the court cautioned the defendant that he was going to proceed with the arraignment or, at his option, be referred for a psychiatric examination. Defendant finally relented to be arraigned on the set of fingerprints that was before the court which reflect his name as Richard Devone. Defendant, through his Legal Aid lawyer, served notice upon the District Attorney that he wished to exercise his right to testify before the Grand Jury which would be hearing evidence on his case. Bail was set on this case, as well as the out-of-county warrants, and defendant was remanded to the custody of the Correction Department. The court also ordered that defendant be reprinted by the next court date of April 12.
On the next court appearance in the AP2N felony waiver part, 18-B counsel (County Law art 18-B) was assigned to represent the defendant, apparently because of the conflict presented by the Legal Aid Society’s representation of the apprehended juvenile in this case. Still claiming that he was not Richard Devone, defendant agreed to waive the CPL 180.80 release provision, in order to be fingerprinted. No prints were returned to the court on April 14, and the case was adjourned until April 15 with defendant waiving the CPL 180.80 release provision again. Though the court papers reflect that on April 15 the court was told that prints were unobtainable as the defendant had (new?) cuts on his hand, the court adjourned the case again until April 19 for the defendant to be reprinted and again defendant waived his statutory rights to release under CPL 180.80, along with his speedy trial rights.
Defendant was produced in court on April 19. The court file does not indicate whether any new prints were produced for the court’s inspection, but the court noted that the District Attorney produced a photo from Richard Devone’s last arrest. Defendant now claims that the result of fingerprints allegedly taken on April 12 (and/or April 14) under the name William Smith (appended to his motion as exhibit A) demonstrate that he has no criminal record. (It appears to this court that what defendant is referring to is purely a name check with the NYSID system of the name William Smith, as a black male, with a January 1, 1964 date of birth, and a height of 5 feet, 10 inches.) Nevertheless, the court noted that defendant refused the preindictment plea offer made to him and directed that defendant be taken to testify before the Grand Jury that afternoon.
*584 The next annotation on the court file indicates that the People filed a certificate of affirmative Grand Jury action with the court and requested a date of May 3 for arraignment in Supreme Court on the indictment.
The subject of this motion, however, is the allegation that the People, with full knowledge of defendant’s intention to do so, blatantly refused to accord the defendant an opportunity to appear before the Grand Jury. The facts surrounding defendant’s appearance (or nonappearance) are not in dispute. The consequences, of course, are.
Pursuant to CPL 190.45 and 190.50 governing the witness’s appearance before the Grand Jury, the People proffered to defendant a copy of the standard waiver of immunity form, whose completion is an express condition to testifying in the Grand Jury. The People had previously filled out the blank portion of the form with the witness’s name identified as Richard Devone, a/k/a John Doe. The address was left blank, and the charges and date of occurrence were filled in. With counsel present, defendant refused to execute the waiver of immunity form as it had been filled in by the District Attorney, offering instead to execute a waiver of immunity form with the names John Doe, a/k/a William Smith, the name by which he claimed the Department of Correctional Services had him identified in their records. As this "compromise” was unacceptable to the People, defendant refused to sign a waiver of immunity and was not permitted to testify. (All this took place out of the presence of the Grand Jury.)
In his motion alleging a violation of CPL 190.50, defendant claims that had he signed a waiver of immunity form as Richard Devone, his credibility before the Grand Jury would have been undermined, as Richard Devone had a lengthy criminal record. Maintaining he is William Smith, a person with no criminal history, defendant argues that the People’s intransigent position on the waiver coerced his nonappearance. That is, he was forced not to appear because he would have been subjected to the prejudicial effects of being questioned about a criminal history he denies.
Was the failure of the People to accept defendant’s "compromise” regarding the waiver tantamount to a violation of his right to testify pursuant to CPL 190.50?
In the particular circumstances of this case, the court finds that defendant attempted to limit the information the People could elicit at the Grand Jury presentation. In essence, defen *585 dont was trying to fashion for himself a limited waiver of immunity, when the People had not offered him one.
The purpose of having witnesses testify in the Grand Jury is to aid in the information gathering function and to allow the People to put forth their proof as to whether a person should be charged with a crime as a defendant. When a witness testifies before the Grand Jury, his obligation is to testify to all the material and relevant information regarding evidence he possesses. As this may conflict with the constitutional guarantee against self-incrimination, a witness is granted immunity from prosecution. When a defendant, the subject of the Grand Jury presentation, testifies, he is required to sign a waiver of that immunity so that he can testify, but still face prosecution. "When a person testifies before the Grand Jury in his own behalf, he must be permitted to 'give any relevant and competent evidence concerning the case under consideration. Upon giving such evidence, he is subject to examination by the people.’ (CPL 190.50 [5] [b].) Thus, after completing his testimony to the Grand Jury, the person 'may be impeached within the limits of proper cross-examination.’ (People v Rosa, 145 Misc 2d 423, 425; see also, People v Green, 80 AD2d 650.)” (People v Karp, 158 AD2d 378, 388 [Sullivan, J., dissenting], revd 76 NY2d 1006.)
The Legislature has permitted the District Attorney, at his discretion, to limit the immunity afforded to a witness when appropriate (see, CPL 190.45 [4]) so as not to impair his ability to carry out his duty in presenting evidence or acting as legal advisor to the Grand Jury. (See, People v Karp, supra, at 388-389.) The District Attorney clearly is permitted to elicit testimony regarding previous convictions. Defendant’s attempt to use a name other than Devone was a bald attempt at avoiding cross-examination about a lengthy criminal history.
Defendant has contended that the People’s position coerced his failure to testify. Coercion has been found, as a violation of CPL 190.50, when the People have refused to confer upon a defendant a limited waiver of immunity or fashion some compromise when pending unrelated charges are to be the subject of inquiry. (See, People v Scott, 124 Misc 2d 357; People v Griffin, 135 Misc 2d 775; People v Vargas, 150 Misc 2d 1053; People v Betts, 70 NY2d 289.) Defendant, rather than refusing to testify, should have requested a ruling before the empaneling Justice, who could have perhaps ordered yet another reprinting of defendant. In fact, this court ordered that defen *586 dont be reprinted; the criminal history of Richard Devone was matched to the defendant yet again.
Under the facts of this Grand Jury presentation, had defendant been allowed to proceed as he wished, that is, claiming he was William Smith and not Richard Devone, defendant would be raising the issue of identity where there was none. "The misleading nature of signing a false name and the subsequent advantages to defendant” are obvious. (See, People v Thomas, 162 AD2d 822, 823 [3d Dept 1990].) Moreover, the People would have necessarily been put to their proof regarding the defendant’s identity. For example, it might have been necessary to offer expert testimony regarding defendant’s fingerprint records and/or comparisons of defendant’s arrest photo to be introduced by the arresting officer with the Department of Correctional Services’ identification photo, which would then allow the grand jurors to know that defendant was incarcerated. The People would be putting in evidence before the Grand Jury that would not regularly be required in considering whether defendant is to be charged with the crimes alleged. In this case, a buy-and-bust operation, where the identification of defendant as a suspect was made within minutes of the drug transaction, there really is no issue of identity.
Curiously, defendant did not give William Smith as his name to the police at the time of his arrest nor, apparently, did he even respond to a pedigree inquiry. Similarly, defendant did not provide the name William Smith to the criminal justice agency when he was interviewed in preparation for the arraignment.
Moreover, the court also notes, that upon defendant’s arrest, the contents of defendant’s wallet were removed and vouchered by the police. Among the personal effects listed on property voucher F465988, a copy of which was included in the People’s supplemental bill of particulars, is an identification card for public assistance with the last name "Devone”.
Finally, an examination of defendant’s various securing orders (form SC/CRC No. 299K), on which the defendant was held in custody by the Department of Correctional Services, shows that at the arraignment of this case on April 9, 1994 there were two out-of-county bench warrants active for defendant under the name Richard Devone. The New York County docket was subsequently dismissed. The Queens County case (docket 93Q038431), which is reflected on page 9 of the finger *587 print report, was also disposed of — with a plea of guilty on May 26, 1994. Defendant was sentenced to 90 days. Interestingly, the Queens County securing order lists the defendant’s name as "Richard Devonne [sic] A/K/A John Doe”.
Had defendant waived immunity as requested by the People, and the People’s cross-examination exceeded reasonable bounds, or it was subsequently determined that the cross-examination concerned convictions which were not the defendant’s, his remedy would have been by way of a motion to inspect and dismiss. (See, People v Davis, 119 Misc 2d 1013.) To countenance defendant’s position that a CPL 190.50 violation took place would only be inviting a recurrence of the same scenario, i.e., defendant would refuse to execute the waiver and sign as Richard Devone and the People would again refuse to allow him to testify.
The court is convinced that there exists no factual issue that the police arrested this defendant whose name is Richard Devone, and ascribes the same good-faith belief to the People at the time they solicited the waiver of immunity from the defendant. Thus, this court is of the opinion that the People acted reasonably in providing the defendant with a meaningful opportunity to testify and exercise his statutory right to do so. The court finds that the People satisfied their burden under CPL 190.50 and, thus, denies defendant’s motion to dismiss. "With the proffer of too tight-fitting a waiver the defendant himself is responsible for his nonappearance.” (People v Goetz, 131 Misc 2d 1, 13, affd 116 AD2d 316, revd on other grounds 68 NY2d 96.)
The court has reviewed the defendant’s request to dismiss the charges in the furtherance of justice in light of the listed statutory factors and finds no merit to it. The defendant’s criminal record began in 1986 and includes one felony and 13 misdemeanor convictions.